**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MIGUEL MARTINEZ,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF NEW BEDFORD, JARED LUCAS, KEVIN BARBOSA, and JOHN DOE SUPERVISORY OFFICERS,<br><br>Defendants. | No. 1:26-cv-11652-JEK |

**MEMORANDUM AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS**

**KOBICK, J.**

Plaintiff Miguel Martinez was detained pending trial on drug trafficking charges for nearly three years until the Commonwealth dismissed those charges after the Bristol Superior Court found that material omissions in the search warrant applications that led to his arrest would have negated probable cause. Martinez now sues the City of New Bedford; two of its police officers, Jared Lucas and Kevin Barbosa; and other unnamed supervisory officers for their role in his arrest, detention, and prosecution. The complaint asserts federal constitutional claims of unlawful search and seizure, malicious prosecution, and civil conspiracy under 42 U.S.C. § 1983, as well as state law claims of malicious prosecution, false imprisonment, and a violation of the Massachusetts Civil Rights Act, M.G.L. c. 12, §§ 11H and 11I.

Pending before the Court are two motions to dismiss for failure to state a claim, one filed by New Bedford and Barbosa, and another by Lucas. For the reasons that follow, both motions will be granted in part and denied in part. Martinez fails to state a claim against Barbosa. His claims against Lucas for civil conspiracy and a Massachusetts Civil Rights Act violation similarly fail.

His other claims against Lucas, however, survive dismissal. He also plausibly alleges a section 1983 claim against New Bedford for failure to train and supervise its officers.

## BACKGROUND

The following facts are recounted based on the allegations in the complaint and documents sufficiently referenced in that pleading, including the decision of the Bristol Superior Court. *See* ECF 14-1 (that decision); ECF 1-1, ¶¶ 5-6, 8, 33-34 (discussing the decision).

Officers Lucas and Barbosa were employed in 2019 by the New Bedford Police Department. ECF 1-1, ¶¶ 2, 13-14. In March 2019, Lucas introduced Barbosa to a confidential informant, whom Lucas described as "reliable" because her information had led to prior narcotics arrests and seizures. *Id.* ¶¶ 17-18. Lucas neglected to mention that both he and Martinez were involved in sexual relationships with the informant. *Id.* ¶¶ 19-20, 22. He also knew, yet omitted, that the informant wanted Martinez to be arrested so that she could end their relationship. *Id.* ¶¶ 21-22. Lucas "intentionally concealed" these details from Barbosa. *Id.* ¶¶ 4, 22.

In April 2019, Barbosa filed affidavits in support of applications for three warrants to search Martinez's residence and vehicle as well as a suspected "stash house." *Id.* ¶¶ 2, 24, 29. Relying on Lucas' representations, those affidavits emphasized the confidential informant's reliability and her two controlled purchases from Martinez but did not disclose her sexual relationship with either Lucas or Martinez. *Id.* ¶¶ 4, 25-28. After the three search warrants were issued and executed on April 3, 2019, Martinez was arrested, indicted on drug trafficking offenses, and placed in pretrial detention. *Id.* ¶¶ 7, 30-31. That detention lasted nearly three years. *Id.* ¶ 8.

In 2024, Martinez learned about these omitted details and moved to suppress the evidence seized through the search warrants pursuant to a hearing under *Franks v. Delaware*, 438 U.S. 154

(1978). *Id.*¶ 32.[1] On May 21, 2024, after a three-day evidentiary *Franks* hearing, the Bristol Superior Court found it more likely than not that "Lucas was either himself motivated by personal animus, because of his personal interest in [the informant] or aware that [she] was participating as a confidential informant out of personal vengeance, or a combination of both." ECF 14-1, at 1, 10-11; *see* ECF 1-1, ¶¶ 8, 33. The "search warrant affidavit [would] not establish probable cause to search the two residences and the Jeep" if it had disclosed the informant's "simultaneous relationship[s]" with Martinez and Lucas because, the Superior Court concluded, that information "undermines her reliability and compromises the controlled buys." ECF 14-1, at 20. Since Martinez had "met his burden" to show "that the magistrate's finding of probable cause would have been negated," the state court granted his motion to suppress the narcotics found during the searches. *Id.*; *see* ECF 1-1, ¶ 34.

After that evidence was suppressed, the Commonwealth dismissed the criminal case against Martinez. ECF 1-1, ¶¶ 35-36. Martinez filed this action in Bristol Superior Court in March 2026. ECF 6, at 1, 4. The named defendants removed the case to this Court in April 2026. ECF 1. Against Barbosa and Lucas, the complaint asserts federal constitutional claims of unlawful search and seizure (Count I), malicious prosecution (Count II), and civil conspiracy (Count III) pursuant to 42 U.S.C. § 1983; a claim under the Massachusetts Civil Rights Act ("MCRA"), M.G.L. c. 12, §§ 11H and 11I (Count V); and common law claims for malicious prosecution (Count VI) and false

---

[1] In *Franks*, the Supreme Court held that, under the Fourth Amendment, a hearing must be held at the defendant's request if "the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the search warrant affidavit, and if the allegedly false statement is necessary to find probable cause." 438 U.S. at 155-56. *Franks* violations also extend to "deliberate or reckless omissions of material information." *Besosa-Noceda v. Torres*, 164 F.4th 19, 26 (1st Cir. 2026).

imprisonment (Count VII). ECF 1-1, ¶¶ 38-65, 77-88. Martinez also claims that New Bedford violated 42 U.S.C. § 1983 by depriving him of his constitutional rights (Count IV). *Id.* ¶¶ 66-76.

New Bedford and Barbosa moved to dismiss the complaint for failure to state a claim in April 2026. ECF 13. The following month, Lucas filed a separate motion to dismiss. ECF 18. Martinez opposed both motions. ECF 17, 21. The Court held a hearing in October 2026 and took the two motions under advisement. ECF 23.

## STANDARD OF REVIEW

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must determine "whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintif[f], the complaint states a claim for which relief can be granted." *Cortés-Ramos v. Martin-Morales*, 956 F.3d 36, 41 (1st Cir. 2020) (quotation marks omitted). The complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. The Court "may properly consider only facts and documents that are part of or incorporated into the complaint." *Rivera v. Centro Médico de Turabo, Inc.*, 575 F.3d 10, 15 (1st Cir. 2009) (quotation marks omitted).

## DISCUSSION

### I. Constitutional Claims under Section 1983.

Martinez asserts four constitutional claims under 42 U.S.C. § 1983. The Court addresses each in turn.

A. Unlawful Search and Seizure Claim.

Count I asserts that Barbosa and Lucas violated Martinez's Fourth Amendment right against unreasonable searches and seizures. The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Subject to certain exceptions, the Amendment generally "requires police officers to secure a search warrant supported by probable cause prior to effecting a search or seizure." *United States v. Gifford*, 727 F.3d 92, 98 (1st Cir. 2013). To sustain this Fourth Amendment claim, since Martinez "was arrested and detained based on a judicial order predicated on probable cause," he must plausibly allege that Barbosa and Lucas violated the principles articulated in *Franks v. Delaware*, 438 U.S. 154. *Besosa-Noceda v. Torres*, 164 F.4th 19, 26 (1st Cir. 2026). A *Franks* violation may occur "where an official submits material information to the magistrate in bad faith"—that is, as relevant here, with "deliberate or reckless omissions of material information." *Id.* Such omissions "only violate the Fourth Amendment when they are material to the neutral magistrate's probable cause determination." *Boudreau v. Lussier*, 901 F.3d 65, 76 (1st Cir. 2018).

Martinez fails to allege that Barbosa acted in bad faith. According to the complaint, Lucas "intentionally concealed" material information about the confidential informant—namely, her intimate relationship with both Lucas and Martinez and her personal motive to bring about Martinez's arrest—from Barbosa. ECF 1-1, ¶¶ 4, 21-22, 56-57. Unaware of that information, Barbosa relied upon Lucas' representations about the informant's reliability "in preparing and submitting search warrant affidavits." *Id.* ¶¶ 17-18, 24, 57. Where he did not know of Lucas' material omissions, Barbosa cannot be said to have "omitt[ed] information with a reckless disregard for the truth." *Besosa-Noceda*, 164 F.4th at 28; *see Franks*, 438 U.S. at 165 (under the

Fourth Amendment, a truthful affidavit "does not mean 'truthful' in the sense that every fact recited in the warrant affidavit is necessarily correct" but "that the information put forth is believed or appropriately accepted by the affiant as true"). Accordingly, Count I against Barbosa must be dismissed.

For his part, Lucas argues that qualified immunity shields him from liability on this claim. The qualified immunity inquiry proceeds in "a now-familiar two-part test: (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was clearly established at the time of the defendant's alleged violation.'" *Penate v. Hanchett*, 944 F.3d 358, 366 (1st Cir. 2019) (quotation marks omitted). "The 'clearly established' inquiry itself has two elements." *Id.* The first requires the court to consider "the clarity of the law at the time of the violation." *Id.* (quoting *Drumgold v. Callahan*, 707 F.3d 28, 42 (1st Cir. 2013)). That element can be satisfied by finding binding or persuasive case law addressing similar facts, or a more general accepted proposition that applies with obviousness to the facts in question. *See Berge v. Sch. Comm. of Gloucester*, 107 F.4th 33, 39 (1st Cir. 2024). The second requires the court to consider "the facts of the particular case and whether a reasonable defendant would have understood that his conduct violated the plaintiff's constitutional rights." *Penate*, 944 F.3d at 366 (quoting *Drumgold*, 707 F.3d at 42). It is the plaintiff's "burden [to demonstrate] that the law was clearly established at the time of the alleged violation." *Mitchell v. Miller*, 790 F.3d 73, 77 (1st Cir. 2015). A court may address either prong of the qualified immunity analysis first, and it need go no further if that inquiry is dispositive. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Martinez alleges a plausible constitutional violation under *Franks* against Lucas. As pled, Lucas "intentionally" withheld "material facts necessary to a probable determination" from Barbosa, who submitted the search warrant affidavits. ECF 1-1, ¶¶ 24, 41-44. Those affidavits

relied heavily on the informant's reliability and the two controlled purchases that she conducted. *Id.* ¶ 25. Yet the affidavits did not disclose that Lucas "was engaged in a long-term sexual relationship with the informant" or that the "informant was romantically involved with [Martinez] at the time." *Id.* ¶ 4. That information was material, the complaint alleges, for the same reasons that the Bristol Superior Court found materiality. *Id.* ¶ 5. The state court held that if "Lucas' omissions about his relationship with [the informant] and her simultaneous relationship with" Martinez were "inserted into" the search warrant affidavits, those affidavits would "not establish probable cause to search the two residences and the Jeep" because the omitted "information undermines her reliability and compromises the controlled buys." ECF 14-1, at 20. That court appropriately considered whether "insert[ing] the facts recklessly omitted" into the "warrant affidavit would establish probable cause," and determined that it would not. *Burke v. Town of Walpole*, 405 F.3d 66, 82 (1st Cir. 2005) (quotation marks omitted).

Lucas counters that he did not make any affirmative "fabrications," "mistakes, falsehoods, or lies" that were included in the affidavits submitted by Barbosa. ECF 19, at 8-9. But a Fourth Amendment violation may result from an officer's "intentional or reckless *omission* of material exculpatory facts from information presented to a magistrate." *Boudreau*, 901 F.3d at 76 (quotation marks omitted and emphasis added). Lucas also asserts that his omissions were "not reckless" and "did not mislead the issuing magistrate." ECF 19, at 8. This assertion is, however, inconsistent with the repeated allegations in the complaint that Lucas "intentionally" or "reckless[ly]" omitted material information. ECF 1-1, ¶¶ 4, 22-23, 40. And Lucas' assertion is undermined by the Bristol Superior Court's finding that "Lucas intended to mislead . . . Barbosa, and eventually the magistrate, by omitting relevant details" about the confidential informant's relationships. ECF 14-1, at 17; *see* ECF 1-1, ¶¶ 5, 33. Martinez's allegations, as well as the state court decision, thus

support the plausible inference that Lucas committed a *Franks* violation by knowingly omitting material information probative of the informant's reliability. *See Burke*, 405 F.3d at 86 ("[A] police defendant who acts intentionally or with reckless disregard for the truth may not insulate himself from liability through the objectively reasonable conduct of other officers.").

As to the second prong of the qualified immunity analysis, an individual's Fourth Amendment rights are clearly violated when an officer intentionally or recklessly omits material information from a search warrant affidavit. "It is . . . beyond peradventure that arrests procured on the basis of . . . testimony given in reckless disregard for the truth violate the Fourth Amendment." *Martínez-Rodríguez v. Guevara*, 597 F.3d 414, 420 (1st Cir. 2010). The First Circuit has also repeatedly recognized "the clearly established prohibition on material omissions by officers central to an investigation from an arrest warrant application." *Burke*, 405 F.3d at 88; *see United States v. Rumney*, 867 F.2d 714, 720 (1st Cir. 1989).

Lucas protests that Martinez has defined the Fourth Amendment right too broadly. In his view, the question "is whether it was 'clearly established' that Lucas omitting information from the affidavit regarding his intimate relationship with the Informant constituted a violation of Martinez's Constitutional Rights," and the "answer is no." ECF 19, at 6. Lucas is correct that courts should not "define clearly established law at too high a level of generality." *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021) (per curiam). But Martinez need not "identify cases that address the particular factual scenario that characterizes his case" because "[g]eneral statements of the law are not inherently incapable of giving fair and clear warning to public officials" like Lucas. *Alfano v. Lynch*, 847 F.3d 71, 76 (1st Cir. 2017) (citation modified). Well before 2019, the Supreme Court had made it abundantly "'clear that police officers cannot . . . recklessly . . . exclude material information known to them'" from warrant affidavits. *Jordan v. Town of Waldoboro*, 943 F.3d 532,

548 (1st Cir. 2019) (quoting *Miller v. Prince George's Cnty.*, 475 F.3d 621, 630 (4th Cir. 2007)), *abrogated on other grounds by Thompson v. Clark*, 596 U.S. 36 (2022). And no "reasonable official under similar circumstances would have thought it was constitutionally permissible" to withhold from the search warrant affidavits the fact that he and the target of an investigation were both in an intimate relationship with the key confidential informant, who was herself motivated to get the target arrested. *Guillemard-Ginorio v. Contreras-Gómez*, 585 F.3d 508, 529 (1st Cir. 2009) (quotation marks omitted). Accordingly, qualified immunity does not shield Lucas from Martinez's claim that the omission of such information from those affidavits violated his Fourth Amendment right against unlawful searches and seizures. *Cf. Hernandez-Cuevas v. Taylor*, 723 F.3d 91, 105 (1st Cir. 2013) (affirming denial of qualified immunity where defendant alleged plausible *Franks* violation). Count I against Lucas therefore survives dismissal.

B. Malicious Prosecution Claim.

Count II asserts that Barbosa and Lucas violated Martinez's right to be free from malicious prosecution under the Fourth Amendment by instituting criminal proceedings against him without probable cause. A Fourth Amendment claim for malicious prosecution protects individuals "targeted for unreasonable, baseless prosecutions, and who, as a result, are detained without probable cause during the pretrial period." *Id.* at 98. To make out this claim, Martinez must allege that these defendants "'(1) caused (2) a seizure of [him] pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in [his] favor.'" *Charron v. County of York*, 49 F.4th 608, 618 (1st Cir. 2022) (quoting *Hernandez-Cuevas*, 723 F.3d at 101). He must also allege that they "formulated evidence essential to the probable cause determination with a mental state similar to common law malice." *Hernandez-Cuevas v. Taylor*, 836 F.3d 116, 124 (1st Cir. 2016) (quotation marks omitted). In that context, "malice" generally means "'the intent,

without justification or excuse, to commit a wrongful act'" or "'[r]eckless disregard of the law or of a person's legal rights.'" *Hernandez-Cuevas*, 723 F.3d at 102 n.11 (quoting Black's Law Dictionary 712 (8th ed. 2004)).

Martinez fails to plausibly allege that Barbosa acted with a malicious mental state. According to the complaint, Barbosa was unaware of the confidential informant's sexual relationship with Lucas and Martinez when he submitted the search warrants because Lucas intentionally withheld those facts from him. From Barbosa's perspective, he had probable cause to pursue the warrants based on Lucas' representations about the informant's reliability and her aid with controlled buys in the case. There is, accordingly, no factual support for Martinez's conclusory allegation that Barbosa "acted intentionally or with reckless disregard for [his] constitutional rights." ECF 1-1, ¶ 51. Count II against Barbosa must therefore be dismissed. *See Diaz-Colon v. Toledo-Davila*, 922 F. Supp. 2d 189, 201 (D.P.R. 2013) (dismissing section 1983 malicious prosecution claims where plaintiff made "only conclusory assertions" that were "unsupported by any real factual allegations").

Lucas does not challenge the sufficiency of the factual allegations in connection with this malicious prosecution claim. Instead, Lucas argues that he is again entitled to qualified immunity on Count II for the same reasons as Count I. Having already rejected that argument, the Court will not dismiss the malicious prosecution claim against Lucas on qualified immunity grounds either.

C. Civil Conspiracy Claim.

Count III asserts a section 1983 claim based on an alleged conspiracy between Barbosa and Lucas to deprive Martinez of his constitutional rights. Such a claim involves "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a

wrong against or injury upon another, and an overt act that results in damages." *Sánchez v. Foley*, 972 F.3d 1, 11 (1st Cir. 2020) (quotation marks omitted). To state a civil rights conspiracy claim under section 1983, Martinez must allege both a "conspiratorial agreement" and "an actual abridgment of some federally-secured right." *Nieves v. McSweeney*, 241 F.3d 46, 53 (1st Cir. 2001).

Martinez falters on the first element—namely, the existence of a conspiratorial agreement between the individual defendants. He makes a conclusory allegation that Barbosa and Lucas "knowingly acted in concert" with one another with the "shared" objective "to secure search warrants and initiate criminal charges against" Martinez, without disclosing material information. ECF 1-1, ¶¶ 60, 63. But this assertion is belied by all of the factual allegations in the complaint. In particular, the complaint alleges that Lucas "intentionally withheld" from Barbosa "material information directly bearing on the credibility and reliability of the confidential informant" and "Barbosa relied upon Lucas's representations" that the informant was credible in submitting the search warrant affidavits. *Id.* ¶¶ 54, 57-58. Absent any allegation that Barbosa knew or had reason to know of Lucas' failure to disclose such information, there is nothing to support a plausible inference that Barbosa agreed to join Lucas' allegedly unconstitutional scheme. *See Kadar Corp. v. Milbury*, 549 F.2d 230, 233 (1st Cir. 1977) (affirming dismissal of section 1983 claim due to a "complete absence of any facts to connect defendants with an illegal scheme"); *Pigott v. Lynn Police Dep't*, 7 F.3d 218, 1993 WL 375821, at *6 (1st Cir. 1993) (per curiam) (same where "allegations fail[ed] to raise an inference that the named defendants agreed to deprive [plaintiff] of his constitutional rights"). While Martinez is correct that he "need not present direct evidence of the agreement" at the pleading stage, *Sánchez*, 972 F.3d at 12, his "allegations of conspiracy must nevertheless be supported by material facts, not merely conclusory statements," *Slotnick v. Garfinkle*, 632 F.2d 163, 165 (1st Cir. 1980). Because the complaint fails to meet that standard, his

civil conspiracy claim under section 1983 must be dismissed as to Barbosa, and as to Lucas, who cannot conspire with himself.

D. Municipal Liability Claim.

Count IV asserts a Fourth Amendment claim against the City of New Bedford under 42 U.S.C. § 1983. This claim is premised on two distinct theories: (1) the City had a policy that allowed its officers to exploit confidential informants and conceal credibility conflicts, and (2) it failed to properly train or supervise its officers to prevent such misconduct. ECF 1-1, ¶¶ 68-69. These theories "each deman[d] a different kind of proof." *Haley v. City of Boston*, 657 F.3d 39, 51 (1st Cir. 2011).

As for Martinez's first theory, "a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue" because "vicarious liability will not attach under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694-95 (1978)). Martinez must therefore allege that New Bedford, "through its *deliberate* conduct, . . . was the 'moving force' behind the injury alleged," *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997), and that the illegal action was taken "pursuant to official municipal policy" or custom "of some nature," *Monell*, 436 U.S. at 691. Such policies include "practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

The complaint fails to plausibly allege that New Bedford had a policy, practice, or custom of tolerating or ratifying officers' misconduct with respect to confidential informants. *See* ECF 1-1, ¶ 68(e). This allegation is contradicted by other allegations, including that the City had "departmental policies prohibiting sexual relationships between officers and informants" and "maintained policies, customs, or practices governing the use of confidential informants and the

preparation of search warrant affidavits." *Id.* ¶¶ 67, 68(b). Lucas' allegedly intentional concealment of material information also reasonably suggests that he knew that his failure to disclose such information violated those policies. *Id.* ¶¶ 4, 22-23; *see Abdisamad v. City of Lewiston*, 960 F.3d 56, 61 (1st Cir. 2020) (affirming dismissal of *Monell* policy claim where complaint alleged that harm was caused by "defendants' 'failure . . . to follow their protocols'"); *Jordan*, 943 F.3d at 547 (same at summary judgment where plaintiff argued that "officers recklessly or intentionally drew up a misleading affidavit in order to secure a warrant" because it was unclear "how this misbehavior [could] be attributed to a custom or policy of the Town"). Nor does Martinez identify any New Bedford police officer besides Lucas who has been accused of a similar *Franks* violation. *See Mahan v. Plymouth Cnty. House of Corr.*, 64 F.3d 14, 16-17 (1st Cir. 1995) ("evidence of a single incident is insufficient . . . to establish a municipal custom or usage" under *Monell* (quotation marks omitted)); *Lavigne v. Great Salt Bay Cmty. Sch. Bd.*, 146 F.4th 115, 127 n.6 (1st Cir. 2025) ("isolated actions of one employee . . . do not allege a 'well settled and widespread' practice"). Martinez has therefore failed to plausibly allege that New Bedford's policy, practice, or custom was the moving force behind his pretrial detention without probable cause.

Turning to Martinez's second theory, he "must first identify a constitutional violation and then show that the violation was the direct result of poor training or supervision of municipal employees." *Hewes v. Pangburn*, 162 F.4th 177, 192 (1st Cir. 2025) (quotation marks omitted). Martinez must also plausibly allege that "'municipal decisionmakers either knew or should have known that training [or supervision] was inadequate but nonetheless exhibited deliberate indifference to the unconstitutional effects of those inadequacies.'" *Wadsworth v. Nguyen*, 129 F.4th 38, 68 (1st Cir. 2025) (quoting *Cosenza v. City of Worcester*, 120 F.4th 30, 38 (1st Cir. 2024)). Ordinarily, a "'pattern of similar constitutional violations by untrained [or unsupervised]

employees'" is needed to show deliberate indifference. *Cosenza*, 120 F.4th at 38 (quoting *Connick*, 563 U.S. at 62). But "in very rare cases," such a pattern may not be necessary "so long as the violation . . . is a highly predictable consequence of a failure to equip governmental actors with specific tools to handle recurring situations." *Wadsworth*, 129 F.4th at 68 (citation modified).

Martinez alleges a plausible claim against New Bedford on a failure to train or supervise theory. For its part, New Bedford did not address this theory in its brief. Nor did it argue at the motion hearing that Martinez's failure to allege a pattern of similar constitutional violations is fatal. At this stage, this case plausibly falls "within the rare category where a plaintiff need not point to a pattern of prior violations" and can instead rely on a single constitutional injury—here, Lucas' violation of *Franks*. *Id.* at 69. According to the complaint, New Bedford fails "to adequately supervise and monitor officers' relationships with confidential informants" and "to train officers regarding constitutional disclosure obligations under Franks." ECF 1-1, ¶¶ 68(a), (d). New Bedford knew that "the use of confidential informants in drug investigations presents a recurring situation requiring careful supervision, training, and enforcement of ethical boundaries," given the "obvious and highly predictable" risk that "officers would misuse [these] informants, conceal material credibility conflicts, [and] exploit personal relationships" in such investigations. *Id.* ¶¶ 69-70. Internal complaints generally placed the City on notice "of risks associated with inadequate informant supervision and officer misconduct." *Id.* ¶ 73. And, as alleged, Lucas' *Franks* violation was "a direct and foreseeable result of the City's" failure to properly train and supervise its officers. *Id.* ¶ 74. These allegations support the plausible inference that New Bedford knew that such a violation was a predictable consequence of its police department's failure to train its officers regarding, or supervise their use of, confidential informants, and that the department was therefore deliberately indifferent to Martinez's Fourth Amendment rights. *See Young v. City of Providence*

*ex rel. Napolitano*, 404 F.3d 4, 27-30 (1st Cir. 2005) (reversing summary judgment on failure to train claim where a jury could similarly find deliberate indifference based on deficient training without prior constitutional violations). Accordingly, insofar as it is premised on a failure to train or supervise theory, Count IV will not be dismissed.

## II. Massachusetts Civil Rights Act Claim.

Count V asserts that Barbosa and Lucas violated the Massachusetts Civil Rights Act, M.G.L. c. 12, §§ 11H and 11I. The MCRA forbids "any person or persons" from "interfer[ing] by threats, intimidation or coercion" with another's enjoyment of his or her civil rights. M.G.L. c. 12, § 11H. To state a claim under the MCRA, Martinez must allege that "'(1) the exercise or enjoyment of some constitutional or statutory right; (2) has been interfered with, or attempted to be interfered with; and (3) such interference was by threats, intimidation, or coercion.'" *Barron v. Kolenda*, 491 Mass. 408, 423 (2023) (quoting *Glovsky v. Roche Bros. Supermarkets, Inc.*, 469 Mass. 752, 762 (2014)). Courts "employ a reasonable person standard in determining whether a defendant's conduct constitutes such threats, intimidation, or coercion." *Glovsky*, 469 Mass. at 763.

Martinez fails to plausibly allege that either Barbosa or Lucas engaged in such improper conduct. According to the complaint, those defendants' "misuse of the criminal process, procurement of unconstitutional warrants, and initiation of criminal charges constituted coercive interference with [Martinez's] rights." ECF 1-1, ¶ 79. For purposes of the MCRA, "'coercion' is 'the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done.'" *Glovsky*, 469 Mass. at 763 (quoting *Haufler v. Zotos*, 446 Mass. 489, 505 (2006)). But the alleged conduct of Barbosa and Lucas cannot reasonably be viewed as coercion within the meaning of the MCRA. The complaint includes no allegations that either Barbosa or Lucas applied any force whatsoever to Martinez. *See Salmon v.*

*Lang*, 57 F.4th 296, 317-18 n.18 (1st Cir. 2022) ("MCRA claims based on police intervention are not actionable without some showing of physical force or an actual and unwarranted threat of arrest, or 'other serious adverse consequences.'" (quoting *Glovsky*, 469 Mass. at 764)).

True, Lucas' intentional omission of material information about the confidential informant raises a plausible violation of Martinez's Fourth Amendment rights. But "the direct violation of a right by itself is not the equivalent of coercion." *Currier v. Nat'l Bd. of Med. Exam'rs*, 462 Mass. 1, 13 (2012). Martinez also fails to cite a single case to support treating Lucas' actions as coercion. *See* ECF 21, at 9; *Brunelle v. Lynn Pub. Schs.*, 433 Mass. 179, 183 (2001) (rejecting plaintiffs' assertion that defendant's "initiation of a criminal complaint" constituted coercion); *Longval v. Comm'r of Corr.*, 404 Mass. 325, 333 (1989) (finding "no coercion, within the meaning of the [MCRA], simply from the use of force by prison officials, authorized to use force, in order to compel a prisoner to do something he would not willingly do, even if it turns out that the official had no lawful right to compel the prisoner to take that action"). Absent any alleged conduct amounting to coercion, the MCRA claim against Barbosa and Lucas must be dismissed.

## III. <u>Malicious Prosecution Claim.</u>

Count VI asserts a common law malicious prosecution claim against Barbosa and Lucas. "The essence of the tort of malicious prosecution is 'interference with the right to be free from unjustifiable litigation.'" *Chervin v. Travelers Ins. Co.*, 448 Mass. 95, 102 (2006) (quoting *Foley v. Polaroid Corp.*, 381 Mass. 545, 552 (1980)). To sustain his claim of malicious prosecution, Martinez must allege "(1) the institution of criminal process against [him] with malice; and (2) without probable cause; and (3) the termination of the criminal proceeding in [his] favor." *Gutierrez v. Massachusetts Bay Transp. Auth.*, 437 Mass. 396, 405 (2002) (quotation marks

omitted). In this context, "malice" means that a defendant "was motivated by an improper purpose." *Chervin*, 448 Mass. at 110.

Lucas contests only the first element. From his vantage point, Lucas did not initiate criminal proceedings because there is no allegation that he arrested or prosecuted Martinez. But the institution of criminal process can occur before a criminal complaint is filed. *See Correllas v. Viveiros*, 410 Mass. 314, 318 (1991) ("[A] person need not swear out a criminal complaint in order to be held answerable for malicious prosecution."). A defendant "may be said to have instituted criminal proceedings against another if he caused those proceedings to be initiated." *Limone v. United States*, 579 F.3d 79, 89 (1st Cir. 2009); *see Yacubian v. United States*, 750 F.3d 100, 109-10 (1st Cir. 2014) ("complaint must permit the 'reasonable inference' that [defendant] in some sense caused the bringing of the [criminal] charges" (quoting *Iqbal*, 556 U.S. at 678)). The complaint plausibly alleges just that: Lucas caused Barbosa to file the search warrant applications that led to Martinez's arrest by representing to Barbosa that the informant was a reliable witness while concealing his and Martinez's sexual relationship with that witness. *See Limone*, 579 F.3d at 89 ("If an individual induces another person (say, a police officer or prosecutor) to lodge formal criminal charges, he may be held to have instituted the criminal proceedings.").

Lucas further argues that the complaint does not adequately allege malice. But "malice may be inferred from a lack of probable cause." *Chervin*, 448 Mass. at 109 (citing *Wilder v. Holden*, 41 Mass. 8, 24 Pick. 8, 11 (1833)). The complaint plausibly alleges that Lucas knew that there was no probable cause to search Martinez's property. *See Limone*, 579 F.3d at 91 ("[A]n individual may be held liable for malicious prosecution if he . . . insist[s] that the prosecution go forward even after it has become clear that probable cause is lacking."). Malice may also be established by allegations that Lucas "either personally acted with an improper motive or he knew

that [another person] was motivated by malice." *Beecy v. Pucciarelli*, 387 Mass. 589, 593-94 (1982). The complaint expressly alleges the latter—namely, that Lucas allegedly "knew or had reason to know that the informant had personal motive to cause [Martinez's] arrest in order to end her relationship with him." ECF 1-1, ¶ 21. The plausibility of this allegation is reinforced by the Bristol Superior Court's finding that "Lucas was either himself motivated by personal animus, because of his personal interest in [the informant] or aware that [she] was participating as a confidential informant out of personal vengeance, or a combination of both." ECF 14-1, at 11. Since the complaint satisfies the first element and Lucas does not contest the other elements, Martinez's claim of malicious prosecution against Lucas will not be dismissed.

With respect to Barbosa, Martinez fails to adequately allege malice. The complaint alleges that "Lucas intentionally concealed" the relevant facts from Barbosa, who "relied on Lucas's representations in preparing and submitting search warrant affidavits." ECF 1-1, ¶¶ 22, 24. These allegations indicate that Barbosa was unaware of Martinez's misconduct and thus do not support the plausible inference that Barbosa acted with malice. *See Yacubian*, 750 F.3d at 110 (affirming dismissal of malicious prosecution claim where defendant allegedly had no "knowledge pertinent to the false statement charge"). Nor does Martinez "allege any improper motive on [Barbosa's] part." *Beecy*, 387 Mass. at 594. Martinez's additional allegation that criminal proceedings were initiated against him "with malice or reckless disregard for [his] rights" does not change this conclusion because the complaint contains no facts supporting that conclusory statement. ECF 1-1, ¶ 84; *see Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The malicious prosecution claim against Barbosa must therefore be dismissed.

## IV. False Imprisonment Claim.

Count VII asserts a claim of common law false imprisonment against Barbosa and Lucas. False imprisonment occurs when defendants "'impos[e] by force or threats an unlawful restraint upon freedom of movement.'" *Gallagher v. S. Shore Hosp., Inc.*, 101 Mass. App. Ct. 807, 831-32 (2022) (quoting *Wax v. McGrath*, 255 Mass. 340, 342 (1926)). Defendants may also "be liable for false imprisonment carried out by third parties if they engage in conduct that sets in motion a false imprisonment knowing that there was no lawful basis for the imprisonment." *Id.* at 832.

Martinez fails to state a false imprisonment claim against Barbosa. The complaint does not allege that Barbosa personally restrained Martinez. Barbosa was, based on the complaint, unaware of the lack of probable cause to arrest Martinez because Lucas intentionally omitted material facts from him. Since Barbosa's individual conduct did not "directly impose a restraint upon [Martinez's] liberty" or "caus[e] such restraint to be imposed" by knowingly "providing false information," he cannot be held liable for false imprisonment. *Sarvis v. Bos. Safe Deposit & Tr. Co.*, 47 Mass. App. Ct. 86, 98 (1999); *see Rose v. Town of Concord*, 971 F. Supp. 47, 50-52 (D. Mass. 1997) (officers not liable for false imprisonment claim where there was no evidence they "were aware that they did not have probable cause to arrest" plaintiff at the time of the arrest and "reasonably believed that [plaintiff] had committed a felony"). Accordingly, this claim against Barbosa must be dismissed.

On the other hand, Martinez states a plausible claim of false imprisonment against Lucas. As pled, "Lucas intentionally omitted material facts necessary to a probable cause determination," including that both he and Martinez were "romantically involved" with the confidential informant and that this informant "was seeking [Martinez's] arrest." ECF 1-1, ¶¶ 4, 41. The disclosure of that information, as the complaint alleges and the Superior Court found, "would have negated probable

cause." *Id.* ¶ 33; *see* ECF 14-1, at 20. These allegations support the plausible inference that Lucas knew that there was otherwise no legitimate basis for the search warrants. The fact that Lucas did not participate in the arrest itself is immaterial because, as alleged, he knew that "there was no lawful basis" for Martinez to be arrested and detained. *Sarvis*, 47 Mass. App. Ct. at 98; *see Karjavainen v. Buswell*, 289 Mass. 419, 427 (1935) (defendant would be liable for false imprisonment if he made "false statements" that caused a doctor to request plaintiff's commitment at a hospital, where she was then detained). The false imprisonment claim against Lucas survives dismissal.

## V. Leave to Amend.

For several reasons, Martinez's requests for leave to file an amended complaint, raised in his briefs opposing the defendants' motions to dismiss, will be denied. *See* ECF 17, at 14; ECF 21, at 12. First, the requests are procedurally improper, as neither is asserted in a standalone motion for leave to file an amended complaint. *See Hebert v. Donahue*, 167 F.4th 1, 8-9 (1st Cir. 2026); *Stand With US Ctr. for Legal Just. v. Massachusetts Inst. of Tech.*, 158 F.4th 1, 26-27 (1st Cir. 2025). Second, on the merits, leave to amend is inappropriate because Martinez fails to supplement his requests for leave to amend "with any proposed amendment or any explanation of how [he] would cure the complaint's deficiencies." *United States ex rel. Solano v. Barton Assocs., Inc.*, 177 F.4th 315, 324 (1st Cir. 2026).

At the motion hearing, Martinez's counsel suggested that he could amend the complaint to allege—contrary to the complaint's current allegations—that Barbosa *did* know about Lucas' sexual relationship with the informant. By filing the complaint in state court, however, counsel certified that he had "read the pleading" and "to the best of [his] knowledge, information, and belief there is a good ground to support it." Mass. R. Civ. P. 11(a)(1); *accord* Fed. R. Civ. P.

11(b)(3). Martinez cannot amend the complaint to make directly contradictory allegations where he "was well aware of facts underlying his claim . . . before he filed suit." *Villanueva v. United States*, 662 F.3d 124, 127 (1st Cir. 2011). This "'is not a case of new allegations coming to light following discovery, or of previously unearthed evidence surfacing.'" *Mulder v. Kohl's Dep't Stores, Inc.*, 865 F.3d 17, 21 (1st Cir. 2017) (quoting *Villanueva*, 662 F.3d at 127); *see Steir v. Girl Scouts of the USA*, 383 F.3d 7, 14 (1st Cir. 2004) ("[W]hat the plaintiff knew or should have known and what she did or should have done are relevant to the question of whether justice requires leave to amend."). Rather, as counsel represented, the proposed conflicting allegation about Barbosa's knowledge is based on the informant's testimony during the *Franks* hearing, which, as described in the Bristol Superior Court's decision, was not credited. *See* ECF 14-1, at 3, 9-10. But that decision, repeatedly referenced in the complaint, was issued in May 2024, nearly two years before Martinez initiated this lawsuit in March 2026. *See id.* at 1, 21; ECF 1-1, ¶¶ 5-6, 8, 33-34; ECF 6, at 1. Having chosen to allege—consistent with the Superior Court's factual findings—that Barbosa was unaware that Lucas withheld material information, Martinez will not be permitted to amend his complaint to plead the exact opposite.

## CONCLUSIONS AND ORDERS

For the foregoing reasons, New Bedford and Barbosa's motion to dismiss, ECF 13, and Lucas's motion to dismiss, ECF 18, are GRANTED in part and DENIED in part. All claims against Barbosa and Counts III and V against Lucas are DISMISSED. Counts I, II, VI, and VII against Lucas and Count IV against New Bedford for failure to supervise or train survive dismissal.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
UNITED STATES DISTRICT JUDGE

Dated: November 2, 2026